[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This limited contested dissolution of marriage action was heard on July 27, 30, September 7, 17, 18, and 24, 2001. The plaintiff has resided in this state for a period of at least one year prior to bringing this action. The plaintiff and the defendant married on September 15, 1990, in Milford, Connecticut. There is one minor child issue of the marriage, Christina Lee Nettleton, born January 23, 1992. No other children have been born to the plaintiff since the date of the marriage. Neither party has been the recipient of public assistance. The marriage between the parties has broken down irretrievably without prospect for reconciliation therefore the court dissolves the marriage on the grounds of irretrievable breakdown.
The plaintiff wife is forty-six years of age and she has a B.S. degree in Marketing. This is her first marriage. She has had extreme scoliosis CT Page 14230 since childhood and underwent two disc excision surgeries, the first in March of 1988, and the second in March of 1993. The plaintiff has difficulty sitting and standing for long periods of time and she is limited in her lifting to no more than 20 lbs. She also has headaches, a thyroid condition and asthma. The plaintiff last worked full-time at a credit union association where she was an account executive and marketing manager. This position ended in 1992, while she was pregnant. The plaintiff stayed at home with the minor child and did not resume employment until 1998 when she went to work part-time at a vo-ag school. At that job she worked in the library and cafeteria and she earned approximately $10,000 a year. She voluntarily terminated That position in March 2000. She earns $20 per week as a justice of the peace and she has occasionally served as a substitute teacher.
Despite her physical condition, the plaintiff has maintained a rigorous exercise program and she is capable of sustained physical activity. The court finds that the plaintiff has the ability to maintain full-time employment. Her social security wage earning statement indicates that in 1990, she earned $35,644 working full-time. She recently worked part-time earning $10,000 a year. The court finds she has an earning capacity of at least $27,500 a year.
The plaintiff owns miscellaneous personal property and art works valued in the amount of $13,000. She also has an IRA account accumulated prior to the marriage in the amount of $19,263, and a Lincoln Benefits annuity, funded by her parents, in the amount of $5,216.73. Her financial affidavit indicates liabilities in the total amount of $62,950, $42,000 of which is money received from her parents she claims is a loan.
The husband is forty-seven years of age and is a college graduate. He is employed as a service consultant at a car dealership. His gross income is $950 a week and his net income is $684 a week. Except for the first year, the defendant has worked full-time during the marriage. Due to the lack of credible testimony the court cannot find, as the plaintiff claims, that the defendant is engaged in the sale of used cars.
This is the defendant's third marriage. He enjoys good health although he has been treated for a seizure disorder. During the course of the marriage the defendant accumulated a 401K account in the approximate amount of $20,000. During the pendency of this action he withdrew $10,000 from that account and spent it for his personal needs. This withdrawal is discussed below.
The marital home located at 150 Tanglewood Circle, Milford, Connecticut is jointly owned and was purchased in 1990 for $210,000. The plaintiff contributed $108,000 and the defendant contributed $25,000 toward the CT Page 14231 purchase price and closing costs. The court finds the value of the marital home to be $290,000. It is subject to a mortgage, presently in foreclosure, that has a balance, shown on the plaintiffs financial affidavit, of $90,596 including attorneys' fees and costs. The circumstances and consequences of this mortgage foreclosure, will be discussed later. The parties separated on April 30, 2000, the plaintiff has had exclusive possession of the home since that time.
Throughout the pendency of this action, the parties have been unable to deal with each other as adults on matters pertaining to their daughter. Due to a lack of communication and mutual trust pertaining to the exercise of the defendant's visitation, numerous contempt motions have been filed which will be addressed below. To their credit, and with the assistance of the court appointed guardian for the minor child, the parties reached an agreement regarding custody and visitation, dated July 20, 2001, which was approved and entered as orders of the court on September 7, 2001. Those orders will are to be the orders regarding custody and visitation in the judgment.
Much of the testimony from each party, and their witnesses, centered on the insulting, deceitful, threatening, and uncaring behavior of the other throughout the marriage. The court concludes that the parties are equally responsible for the breakdown of their marriage.
In 1995, the plaintiff received approximately $58,000 from the settlement of a claim against a former employer that arose during the course of the marriage. A portion of the money was spent on payment of joint bills and on improvements to the marital home. The balance and bulk of this money were deposited in a Uniform Transfers to Minors Account for the benefit of the minor child that has the plaintiff as the custodian. The court finds that neither party is entitled to personally receive any portion of the funds in said custodial account as part of these proceedings. To emphasize to the parties that this account should be used only for the benefit of the minor child, the court refers the parties to the following General Statutes: § 45a-558i, Care, and control of custodial property, § 45a-559d, Accounting by and determination of liability of a custodian, and § 45a-242, Replacement of fiduciary.
The defendant has a vested remainder interest in one-half of a trust in which his father is the present life beneficiary. The market value of the trust as of July 25, 2001, is $416,483. The trustee, who is not the defendant, is authorized to pay over to the plaintiffs father so much of the net income of the trust, together with so much of the principal of the trust fund, as the trustee in its sole judgment deems necessary for his support and maintenance without regard of the defendant's fathers s own income and resources. The court finds that this vested remainder CT Page 14232 interest is part of the defendant's estate to be considered by the court pursuant to General Statutes § 46b-81 and § 46b-82. See Carlislev. Carlisle, 12 Conn. L.Rptr. No. 16, 535 (November 14, 1994).
Having determined that this property interest is part of the defendant's estate, the court must look to the evidence to find its present value. The present beneficiary of the trust is alive and he may receive all of the net income of the trust and some or all of the principal during his life, consequently, the court cannot equate the present market value of the trust with the present value of the defendant's remainder interest. Although the present value of the defendant's remainder interest could possibly have been established by expert testimony, none was produced in this case. Without evidence of the present value of the defendant's remainder interest, the court cannot and did not attribute a value to it when formulating its orders regarding property division and alimony. The court is aware that it can retain jurisdiction over periodic alimony for purposes of modification upon the distribution to the defendant of his remainder interest. See Eslami v.Eslami, 218 Conn. 801, 808 (1991). After considering all of the evidence, the court declines to make the distribution of the remainder interest grounds for modification of the alimony ordered herein.
During the course of the trial the court heard evidence on six motions for contempt filed by the plaintiff and eight motions for contempt filed by the defendant. The parties have fought so many pitched battles with each other they have lost sight of, or interest in, the cost of their war to each of them and to their child.
Plaintiff's Motions for Contempt
#142 Re: Payment of Mortgage. On May 4, 2000, the defendant was ordered to pay the mortgage payments for the marital home pendente lite. The defendant has not paid the December 2000 payment or any subsequent payment. The defendant is found in contempt of this order. As a result of this non-payment a foreclosure action was commenced resulting in a judgment of foreclosure by sale containing a sale date of July 28, 2001. The judgment was reopened and the sale date extended to a date subsequent to the trial of this case. The foreclosure complaint, Plaintiff's Exhibit 1, alleges that the balance of the subject mortgage was $78,480 as of November 1, 2000. This balance figure will be used to determine the equity in the marital home. The plaintiff incurred attorneys' fees in connection with the defense of the foreclosure in the amount of $750. The remedy for this contempt is incorporated in the orders. The court declines to award attorneys' fees in connection with this motion.
#144 Re: Automatic Orders. After service of the automatic orders upon CT Page 14233 him, the defendant withdrew the sum of $10,000 from his IRA account. The defendant is found in contempt of the automatic orders. The remedy for this contempt is incorporated in the orders. The court declines to award attorneys' fees in connection with this motion.
#145 Re: Visitation. After considering the evidence on this motion the court declines to find the defendant in contempt.
#146 Re: Temporary Restraining Order. After considering the evidence on this motion the court declines to find the defendant in contempt.
#157 Re: Mortgage/Refinance. The court declines to make a finding of contempt on this motion having considered its ruling on motion number 142.
#159 Re: Alimony and Child Support. The pendente lite orders for child support in the amount of $162 a week and alimony in the amount of $65 a week are currently paid by wage execution. The court finds that at the time of trial the plaintiff has not received all of the money due her under these orders. The court also finds that some of the amount due the plaintiff may be in the process of being transferred from the defendant's employer, through the state of Connecticut, to the plaintiff. There was insufficient evidence from which the court could make a finding on an arrearage, consequently, the court declines to hold the defendant in contempt. This ruling is without prejudice to the plaintiff to re-file her motion for contempt at a later date. The court expects that prior to a filing of such a motion counsel for the plaintiff and the defendant would review the documentation each party has regarding payments and receipt of payments.
Defendant's Motions for Contempt
The defendant has filed the following motions for contempt all of which allege that the plaintiff violated the court's orders regarding visitation: #143 dated January 23, 2001; #151 dated May 3, 2001; #153 dated May 23, 2001; #154 dated May 31, 2001; #155 dated July 3, 2001. After considering the evidence on the motions, and exercising its discretion, the court declines to hold the plaintiff in contempt on these motions. The court previously held the plaintiff in contempt on matters relating to visitation and ordered her to pay attorneys' fees in the amount of $1200. Subsequent to these motions being filed, the parties entered into the agreement regarding custody and visitation previously referred to. The court finds that many of the issues alleged in the foregoing motions have been dealt within the agreement and encourages both parties to abide by the terms of that agreement. CT Page 14234
#165 dated August 8, 2001 Re: Visitation and #164 Re: Visitation dated August 20, 2001. The allegations in both of these motions concern violation of provisions of the agreement for custody and visitation dated July 20, 2001 submitted to the court on the July 27, 2001. After reviewing the transcript of the proceedings conducted on that date, the court finds that the agreement was "not entered as orders of the court on that date; consequently, the court cannot find the defendant in contempt on these motions.
Un-coded Motion dated August 30, 2001 Re: Visitation. Having considered the evidence on this motion, the court declines to find the plaintiff in contempt.
 Discussion
Although the plaintiff has an earning capacity, the court concludes that she is in need of continued support from the defendant by way periodic alimony. The defendant will be ordered to pay the plaintiff the sum of $150 per week for a period of five years. These five years of alimony payments will enable the plaintiff to resume employment, improve her job skills, and increase her earning capacity.
The parties have stipulated that the cost of COBRA health insurance benefits for the plaintiff is $237 per month for HMO coverage and $255 per month for POS coverage. The plaintiff may elect her coverage and the parties shall pay one-half of the cost. The defendants contribution shall be in the nature of spousal support and may be deductible for income tax purposes.
In assigning to the parties their respective interest in the marital home, the court has utilized the following analysis. The marital home has a value of $290,000 and the mortgage balance prior to the delinquency caused by the defendant was $78,480 resulting in equity of $211,520 rounded to $211,500. The court assigns to the parties the contribution they made at the time of purchase, $25,000 to the defendant and $108,000 to the plaintiff. The equity which remains, $78,500 is divided equally between the parties equally. This results in $64,250 to the defendant and $147,250 to the plaintiff. The difference between the present mortgage balance of $90,596, which includes the cost associated with the foreclosure, and the balance of the mortgage on November 1, 2000, $78,480, is $12,116. This amount is deducted from the defendant's portion because the court finds that the increased balance was due to the defendant's non-compliance with court orders. Furthermore, the sum of $750 representing the plaintiffs attorney's fees to defend the foreclosure is also deducted from the defendant's portion. Finally, to adjust for the defendant's impermissible $10,000 withdrawal from his CT Page 14235 401K, that had a balance of $20,000, the court deducts the sum of $10,000 from his portion. Applying these deductions, totaling $22,866, to the amount of the equity assigned to the defendant, $64,250, results in an equity share of $41,384 rounded to $41,400. The court concludes that the plaintiff should be awarded full ownership of the marital home and the defendant's equity share be secured by a mortgage payable upon the occurrence of the events described in the orders.
The court has considered the defendant's claims for credit for certain household improvements and for the purchase of certain marital property and declines to allow any credit to him.
Due to the lack of credible evidence, the court cannot find that the money given to the plaintiff by her parents was in the form of loans.
The parties were awarded joint custody of their daughter pendente lite on May 4, 2000. After that date the child was placed in counseling with a Dr. Sprotzer, who is in the defendant's health insurance network. In February 2001, the plaintiff, without consulting the defendant, brought the child to a new counselor, Dr. Stansbury, who is not in the network. As of August 29, 2000, Dr. Stansbury's charges total $3,025 and they have been paid in full. The plaintiff seeks a contribution from the defendant for these charges. The court declines to order the defendant to contribute to the charges incurred prior to August 29, 2001.
The minor child, Christina, currently attends St. Mary's School. The tuition for the 2001/2002 school year is to be paid equally by the parties. In view of the amount and allocation of income available to the parties, the court declines to enter any orders regarding future tuition payments.
In entering its orders, the court has carefully considered the provisions of General Statutes § 46b-81 regarding assignment of property, § 46b-82 regarding alimony and § 46b-62 regarding attorneys' fees, and for § 46b-56 regarding custody.
 ORDERS
1. The parties shall have joint legal custody of their minor child. The primary physical residence of the child shall be with the plaintiff mother. The provisions of the agreement between the parties dated July 20, 2001, ordered by the court on September 7, 2001, are incorporated by reference herein.
2. The plaintiff is to give the defendant ninety days notice of her intention to relocate the minor child outside a twenty-five mile radius CT Page 14236 of her present residence.
3. The defendant shall pay child support in accordance with the guidelines in the amount of $149 per week. The court has utilized FinPlan in preparing a child support guideline worksheet, which is attached hereto as Exhibit A.
4. The defendant shall maintain the minor child on the health insurance available from his employer. Except as ordered otherwise herein, the parties shall share the cost of un-reimbursed health care expenses for the minor child in accordance with the child support guidelines as follows: defendant 74%, plaintiff 26%.
5. The defendant shall be entitled to claim the minor child as a dependent on his federal and state tax returns.
6. The defendant shall designate the minor child as a beneficiary of the $5,000 life insurance policy provided by his employer.
7. The defendant husband, shall pay to the plaintiff wife, periodic alimony in the amount of $150 per week for a period of 260 weeks to terminate upon the death of either party, or the remarriage of the plaintiff. The alimony is subject to modification in amount as provided by law, however, the term shall be non-modifiable. The plaintiff wife's income shall not be grounds for modification unless it exceeds $35,000 per year. The acquisition by the defendant of the assets comprising his remainder interest in the Kenneth
E. Nettleton Trust shall not be grounds for modification, however, the income the defendant receives from those assets may be considered in any modification of alimony proceeding.
8. The defendant shall quitclaim his interest in the marital home located at 150 Tanglewood Circle, Milford, Connecticut to the plaintiff within thirty days. Contemporaneously, the plaintiff shall execute a mortgage deed and note upon the property to the defendant in the amount of $41,400. Said note shall be without interest and shall be payable upon the earliest occurrence of the following: the plaintiffs death, remarriage, living with another person within the provisions of General Statutes § 46b-86b, sale or of the property, or January 23, 2011. The note shall also be due upon refinance, except that the plaintiff is permitted to refinance the present mortgage without payment of the Defendant's note if said refinance is done within six months of the date of this judgment and the amount of the new mortgage principal does not exceed the balance of the present mortgage, including the foreclosure costs, plus $5000. The plaintiff is to hold the defendant harmless from CT Page 14237 any liability arising out of the present mortgage encumbering the property. The plaintiff shall also be responsible for payment of any property taxes on the marital home.
9. If the plaintiff elects it, the defendant shall maintain COBRA health insurance coverage for the plaintiff for thirty-six months. The defendant and the plaintiff are each to pay one-half of the premiums for said coverage. The amount paid by the defendant for said coverage shall be in the nature of spousal support and may be deductible from his income for income tax purposes.
10. The parties are to submit charges for Dr. Stansbury's services incurred after September 1, 2001 to the health insurance carrier for the minor child. Any un-reimbursed or uncovered expenses for Dr. Stansbury's services incurred after September 1, 2001 shall be paid equally by the parties.
11. On November 9, 2000, the court ordered the plaintiff to pay counsel fees in the amount of $1200 to the defendant's counsel in connection with a motion for contempt. The plaintiff is to pay said counsel fees at the rate of $200 per month to the defendant's counsel commencing December 1, 2001.
12. The September 24, 2001 agreement of the parties regarding payment of unreimbursed medial bills is made an order of the court and incorporated by reference.
13. The defendant is to pay and hold the plaintiff harmless from any tax liability for the 1999 and 2000 tax years.
14. Except as otherwise ordered herein, each party is to be responsible for and hold the other harmless from the debts shown on their respective financial affidavits.
15. Except as otherwise ordered herein, each party is to be responsible for their respective counsel fees
16. Except as otherwise ordered herein, each party is to retain the assets shown on their respective financial affidavits.
17. The defendant shall be entitled to possession of the following items of personal property: grandfather clock, gazing ball and star, three miniature houses, Thanksgiving china set, books and family heirlooms from the cellar and garage, Sears riding mower, Sears push mower, motorcycle parts, telescope, Technics stereo system (not CD's and cassettes), hand and automobile tools and brass nautical lamp. The CT Page 14238 foregoing items of personal property shall be made available to the defendant for pickup at the marital home within thirty days from the date of judgment.
Domnarski, J.
[EDITORS' NOTE: THE TABLE IS ELECTRONICALLY NON-TRANSFERRABLE.]